UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 21-21772-CIV-MORENO**

JOSÉ OVIEDO,

        Plaintiff,

vs.

BOZZUTO & ASSOCIATES, INC., d/b/a
THE BOZZUTO GROUP and BOZZUTO
MANAGEMENT COMPANY,

        Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss for Failure to State a Claim **(D.E. 16)**, filed on **June 25, 2021**. THE COURT has considered the motion, the response in opposition, the reply, the pertinent portions of the record, and being otherwise fully advised in the premises, it is **ADJUDGED** that the motion is granted in part and denied in part.

### I.    Background

This is an employment discrimination case. Plaintiff José Oviedo alleges that his employer, The Bozzuto Group, discriminated against him because of his age and disability. Bozzuto hired Oviedo in January 2018 to be the Chief Engineer of its rental property called Coaba Miami Worldcenter. Oviedo began the position in January 2019. Stephanie Mathieu was the general manager of the property and Oviedo's supervisor.

Oviedo alleges that Mathieu discriminated against him because of his age "from the moment" his employment began. Specifically, Mathieu "took over" his office and "put him to work in the kitchen with no desk," "no place to put his work materials," and "no office chair." As

a result, Oviedo had to "sit on a bar stool" in the kitchen.  One of the building's developers offered to build him an office, but Mathieu rejected this idea.  Oviedo also alleges that Mathieu "micromanaged" him and required him to "wear a uniform or work attire that was not needed or required for mechanical engineers."  Oviedo "opposed" these "discriminatory acts" by "complaining verbally to his supervisor and other management and demanding adequate working conditions."  But Bozzuto "failed to take corrective measures" and Mathieu's "discriminatory conduct" toward Oviedo continued and "intensified."

In March 2019, Oviedo had heart surgery.  During his surgery, Oviedo sustained "damage" to his "ulnar nerve in his right arm."  Oviedo informed Mathieu that because of this damage, he required "an office and a proper desk."  Upon his return, Oviedo alleges that Mathieu's "discrimination and harassment" increased even more and that she "began to directly intervene" with his duties.  She also complained about his performance, saying it "was not good," and ignored his complaints that working at the kitchen counter was "aggravating" his arm.  Mathieu also "threatened" him, saying that "she did not need him and that he could go home if he was not capable of fully performing his job without any restrictions."

Mathieu terminated Oviedo in May 2019.  Her stated reasons consisted of "a laundry list of issues" that she had "not previously" shared with Oviedo.  A person named "Joseph," who was hired during Oviedo's surgery recovery period—and upon information and belief is between 25 and 28 years old and does not have a disability—replaced Oviedo as Chief Engineer.

Oviedo now brings claims for age and disability discrimination in violation of the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the Florida Civil Rights Act.  Bozzuto's pending motion to dismiss for failure to state a claim has been fully briefed, and Bozzuto's arguments contained therein are considered below.

## II.     Legal standard

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true and construed in a light most favorable to the plaintiff. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). A complaint must state a claim that is facially plausible, meaning that it contains sufficient factual content such that the court can reasonably infer that the defendant is liable for the misconduct alleged. *Id.* In other words, "the complaint must provide more than labels and conclusions" and a "formulaic recitation of the elements of a cause of action will not do." *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 143 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (simplified). The facts must lead to the reasonable expectation that discovery will reveal evidence of the defendant's liability. *Id.*

## III.    Analysis

### A.     Age-discrimination claims

Counts I and VI allege age-based termination in violation of the Age Discrimination in Employment Act and Florida Civil Rights Act. Age discrimination claims under these statutes are analyzed using the same framework. *Zaben v. Air Prod. & Chemicals, Inc.*, 129 F.3d 1453, 1455 n.2 (11th Cir. 1997). To establish an age termination case, Oviedo must show (1) that he was between the ages of forty and seventy; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled his position; and (4) that he was qualified to do the job. *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). Although, an employment discrimination complaint need not set out a prima facie case, but just provide "enough factual matter to plausibly suggest intentional discrimination." *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 641 (11th Cir. 2018). Bozzuto argues that Counts I and VI should be dismissed

3

because Oviedo has not alleged that he was treated differently than other employees and because he hasn't alleged facts showing that age was the but-for cause of his termination.

While Oviedo's claims are not particularly detailed, he has pled enough facts to set out a prima facie case and to raise a plausible inference of discrimination. At 59 years old, he is over 40 and thus belongs to a protected group, satisfying prong one. He was terminated, so he was subject to an adverse employment action, satisfying prong two. Oviedo alleges that Joseph is in his 20s, so a substantially younger person filled Oviedo's position, satisfying prong three. Oviedo is a licensed mechanical engineer, so he was qualified for the position of Chief Engineer, which satisfies prong four. In addition, Oviedo pleads specific instances showing that the manager expressed hostility toward him which, combined with the above, raises a plausible inference of discrimination. Thus, Bozzuto's motion to dismiss Counts I and VI is denied.

### B.   Hostile work environment claims

Counts II and VII allege a hostile work environment in violation of the Age Discrimination in Employment Act and Florida Civil Rights Act. A claim for hostile work environment under these statutes requires the plaintiff to show that (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or of direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). In general, a hostile work environment claim is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quoting

4

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).  To be actionable, the environment must be one that both a reasonable person would find hostile, and that the victim subjectively perceived to be hostile.  *Id.* at 1276.  To evaluate the objective severity of the harassment, courts looks at the totality of the circumstances and, among other things, consider: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance.  *Babb v. Sec'y, Dep't of Veterans Affs.*, 743 F. App'x 280, 291 (11th Cir. 2018).

Bozzuto argues that Oviedo has not shown a nexus between his lack of an office or his uniform requirement to his age, and that he hasn't presented evidence that similarly situated employees were treated differently.  Bozzuto also argues that Oviedo has failed to allege that he was subjected to the sort of behavior that typically constitutes a hostile work environment.

Bozzuto is generally correct—Oviedo's claims do not fit the hostile work environment framework.  He complains that he was not provided an office or office chair, that he was required to wear a uniform, and that he was micromanaged.  These allegations "pale in comparison to the sort of conduct" that the Eleventh Circuit "has deemed sufficiently severe and pervasive to create an objectively abusive environment."  *Id.* at 291-92 (simplified).  For example, in *Cobb v. City of Roswell, Georgia ex rel. Wood*, the plaintiff was reassigned and replaced by a younger person, subjected to "ageist" remarks, and found three photos of himself in the office that had been defaced in a derogatory manner.  533 F. App'x 888, 891, 897 (11th Cir. 2013).  Because the plaintiff had shown only a "few discrete incidents apparently unrelated to his age" and not that the "work environment was permeated with discriminatory intimidation, ridicule, and insult," he had not shown an objectively hostile work environment.  *Id.* at 897.  *Guthrie v. Waffle House, Inc.* is also

instructive. 460 F. App'x 803 (11th Cir. 2012). There, the plaintiff submitted evidence that, among other things, her coworker "grabbed" her two to five times, "talked dirty" to her five times, "spoke openly about having sex" with another coworker, and asked the plaintiff on a date 10 to 20 times. *Id.* at 804-805. The court considered this conduct "relatively infrequent compared to cases where [the Eleventh Circuit] has found a hostile work environment," giving the example of conduct that occurred daily. *See id.* at 807. The court also found that the conduct was not severe enough: although the plaintiff's complaints were about "rude and boorish" statements and behavior, they fell short of conduct "so severe as to alter or change the terms" of the plaintiff's working conditions. *Id.* (simplified). It was also relevant that the plaintiff had not felt physically threatened by the conduct. *Id.* at 808.

In comparison, Oviedo's allegations concern conduct that was infrequent. More importantly, the alleged conduct was mild—surely, every employee who desires an office, wishes to change their workplace dress code, and resents their manager's micromanaging, does not have a hostile work environment claim. Finally, the alleged conduct was not physically threatening, and Oviedo has not pled facts explaining how his work duties were interrupted by the conduct. As a result, Oviedo's allegations fall well short of a plausible inference that Bozzuto created a hostile work environment. Counts II and VII are dismissed.

### C.     Failure to accommodate claims

Counts IV and IX allege failure to accommodate in violation of the Age Discrimination in Employment Act and Florida Civil Rights Act. These claims are analyzed using the same framework. *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1021 (11th Cir. 2020). Thus, the elements of a failure to accommodate claim under both are that (1) the plaintiff is a qualified individual with a disability, (2) the plaintiff made a specific request for a reasonable

accommodation, and (3) the employer failed to provide a reasonable accommodation or failed to engage in the requisite interactive process to identify a reasonable accommodation. *Id.*

Bozzuto moves to the dismiss these counts, arguing that Oviedo has failed to allege any factual allegations to support that his termination was caused by his disability. Bozzuto appears to mistake the nature of Oviedo's claims—they are not for termination on the basis of disability but instead for failure to accommodate, as pled in the complaint. Thus, Oviedo opposes dismissal by arguing that he pled that his ulnar nerve was damaged, that he informed Bozzuto of his injury and corresponding need for a desk, and that Mathieu nevertheless failed to provide him with one.

Despite Bozzuto's argument missing the mark, the allegations in the complaint appear insufficient to meet at least the first two prongs. First, while Oviedo is qualified, it is not clear that he has a disability. The law defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," a "record of such an impairment," or "being regarded as having such an impairment." *Mickens v. Polk Cty. Sch. Bd.*, 430 F. Supp. 2d 1265, 1273 (M.D. Fla. 2006) (quoting 42 U.S.C. § 12102(2)). Yet here, Oviedo hasn't pled any facts about the nature of the impairment or limitations that his alleged disability causes. He has only alleged that his ulnar nerve was "damaged" and that his work facilities were "aggravating" his "medical condition."

Second, the complaint does not show whether Oviedo made a specific request for a reasonable accommodation, so prong two is speculative at best. *See Oglesbee v. Deloach*, 19 WL 4284543, at *6 (M.D. Fla. Jan. 24, 2019) ("Where a plaintiff proceeds on the theory of a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a specific demand for an accommodation." (quoting

*McKane v. UBS Fin. Servs., Inc.*, 363 F. App'x 679, 681 (11th Cir. 2010) (internal quotation marks omitted)).  Oviedo does not say whether he made his request orally or in writing, telephonically, electronically, or in person, during or outside of work hours, and most importantly, he does not allege the contents of his request or Mathieu's response.  This is insufficient for prong two.  *United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 876 (11th Cir. 2011) (explaining that "for a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for an accommodation" (simplified)).  Counts IV and IX are accordingly dismissed.

### D.    Retaliation claims

Counts III, V, and VIII allege age and disability retaliation in violation of the Age Discrimination in Employment Act, Americans with Disabilities Act, and Florida Civil Rights Act.  To prove a retaliation claim, a plaintiff must show that: (1) he engaged in protected activity; (2) he was subjected to an adverse employment action at the time, or after the protected conduct took place; and (3) the defendant took an adverse employment action against him because of his protected conduct.  *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1158 (11th Cir. 2005).

Bozzuto argues that Counts III, V, and VIII should be dismissed because Oviedo doesn't show that he engaged in protected activity.  He simply alleges that he complained verbally to his supervisor, and Bozzuto argues this isn't detailed enough to decide whether his objection constitutes protected activity.  Further, Oviedo doesn't plead that Mathieu knew of his protected activity, and so he hasn't shown a causal nexus between his protected activity and his termination.  To these arguments, Oviedo responds first that he alleged that he "opposed" the discriminatory

8

acts and that this is enough, and second, that Mathieu's knowledge of his protected activity will be shown in discovery.

Oviedo is mistaken that he need not allege any details at all of his claimed protected activity. *See Mutka v. Top Hat Imports, LLC*, 2018 WL 6168124, at *2 (M.D. Fla. Nov. 26, 2018) (dismissing a complaint on similar grounds where the plaintiff alleged only that he "objected to Defendant's age discrimination" without the content or manner of the objection); *Verna v. Pub. Health Tr. of Miami-Dade Cty.*, 539 F. Supp. 2d 1340, 1356 (S.D. Fla. 2008). And while discovery might reveal Mathieu's knowledge, Oviedo still must plead facts that show it is at least plausible that she knew about the protected activity. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008) ("[T]he plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action."). He does not do so, however. Counts III, V, and VIII are thus dismissed.

**IV.   Conclusion**

Bozzuto's motion to dismiss is denied as to Counts I and VI. The motion is granted as to all other counts.

DONE AND ORDERED in Chambers at Miami, Florida, this ⟨13th⟩ of December 2021.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

9